IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

INDIAN HARBOR
INSURANCE COMPANY,

    Plaintiff,

vs.                                                        Civ. No. 20-156 JAP/GJF

COOMBES TRUCKING, INC.,

    Defendant.

### MEMORANDUM OPINION AND ORDER

On February 24, 2020, Plaintiff filed a COMPLAINT FOR DECLARATORY JUDGMENT ("Complaint") (Doc. No. 1) seeking a declaratory judgment declaring its rights and obligations under an insurance policy it issued insuring Defendant Coombes Trucking, Inc. On May 18, 2020, Defendant filed DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT & MEMORANDUM IN SUPPORT ("Motion") (Doc. No. 4). Defendant argues that the Court should dismiss the case, or alternatively stay the case, to allow the New Mexico state court to properly determine the parties' rights and obligations. Because the Court believes it would be more appropriate to allow the state court to attempt to resolve this issue first, the Court will stay the case.

**Factual Background**[1]

---

[1] On June 24, 2020, the Court requested that the parties file certain documents from the state court proceedings. On June 25, 2020, Defendant filed an ADDENDUM TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT & MEMORANDUM IN SUPPORT (Doc. No. 10) with copies of the Complaint and Third-Party Complaint in the underlying state action *The Princeton Excess and Surplus Lines Ins. Co. a/s/o Wilbanks Trucking Services, LLC v. Coombes Trucking, Inc*., D-506-CV-2019-00841 ("State Court Case"). The Court takes judicial notice of these official New Mexico court records. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that the Court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand); *Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (unpublished) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed. R. Evid. 201).

1

Plaintiff's contentions with Defendant arise from an insurance arrangement covering transportation of a drilling rig. Defendant allegedly procured a general business insurance policy, Commercial General Liability Policy No. OLS16680317, effective March 1, 2016, to March 1, 2017 ("Policy"), from Plaintiff through various insurance brokers. Compl. at ¶ 1; *see also* COOMBES TRUCKING, INC.'S THIRD-PARTY COMPLAINT FOR PROFESSIONAL NEGLIGENCE, NEGLIGENT MISREPRESENTATION, BREACH OF CONTRACT TO PROCURE INSURANCE, UNJUST ENRICHMENT, INDEMNIFICATION, UNFAIR TRADE PRACTICES, UNFAIR INSURANCE PRACTICES, AND DECLARATORY JUDGMENT ("Third Party Complaint") (Doc. No. 10-2) at ¶¶ 2–27 (explaining Defendant's alleged procurement of insurance and the relevant parties).

Wilbanks Trucking Services, LLC ("Wilbanks") allegedly subcontracted with Defendant for various projects, including the transportation of the drilling rig relevant to this case. COMPLAINT FOR DAMAGES ("Underlying Complaint") (Doc. No. 10-1) at ¶¶ 8, 11. McVay Drilling Co. ("McVay") hired Wilbanks to trailer the drilling rig from Plainview, Texas to Hobbs, New Mexico. *Id*. at ¶ 9. Wilbanks and Defendant then attempted to remove the drilling rig from the trailer, allegedly by a tandem lifting operation. *Id*. at ¶ 12. The attempted lifting operation failed, resulting in the rig falling to the ground and sustaining significant damage. *Id*. at ¶ 13.

The Princeton Excess and Surplus Lines Insurance Company ("Princeton"), under its insurance policy with Wilbanks, paid McVay for the damage incurred from the botched lifting operation. *Id*. at ¶ 14. Princeton, exercising its subrogation rights with Wilbanks, sought indemnification from Defendant under Defendant's contract with Wilbanks. *Id*. at ¶ 8b, 15. Defendant allegedly refused to indemnify Princeton, leading to the Underlying Complaint. *Id*. at

¶ 26. Defendant unsuccessfully sought indemnification through its own insurance policy with Catlin Specialty Insurance Company ("Catlin"). *See* Mot. at 2. Catlin supposedly cited both an excess-weight exclusion and a tandem-lifting exclusion to deny indemnification and defense. *Id*. Plaintiff, as successor-in-interest to Catlin, filed this case seeking a declaration "that with respect to the [State Court Case], coverage is not triggered under the Policy for claims asserted by Princeton and [Plaintiff] has no duty to defend [Defendant]." Compl. at ¶ 16.

### Defendant's Motion

Defendant argues that [c]overage . . . is heavily dependent on factual questions governed by New Mexico state law and which are at issue in state court" and that "in the interest of judicial economy and fairness to all parties . . . this case should be dismissed without prejudice." Mot. at 1–2. Defendant requests that the Court dismiss (or stay) the case to allow the state court to decide the parties' legal obligations under *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 981 (10th Cir. 1994).

Under the Declaratory Judgment Act, a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A declaration under the Act has the force and effect of a final judgment. *See id*. A district court "is not obliged to entertain every justiciable declaratory claim brought before it." *Mhoon*, 31 F.3d at 982. A district court may decline jurisdiction over a declaratory action, and, on appeal, the court of appeals would review that decision for abuse of discretion. *Id*. at 983.

A district court should assess five factors in deciding whether to exercise jurisdiction in a declaratory judgment case. *Id*. These factors include:

> 1) whether a declaratory action would settle the controversy; 2) whether it would serve a useful purpose in clarifying the legal relations at issue; 3) whether the

>declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; 4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and 5) whether there is an alternative remedy which is better or more effective.

*Id*. In considering these factors, a court should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation . . . ." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Supreme Court noted that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id*. Keeping these principles in mind, the Court will address each *Mhoon* factor in turn to resolve whether it should exercise jurisdiction in this case.

       *1. Will a declaratory judgment settle the controversy?*

      The parties disagree whether a declaratory judgment will resolve this dispute. Defendant believes that the "current lawsuit will not determine the factual questions regarding whether the underlying claim falls within Catlin's coverage, and/or the rights and obligations of all parties in the process of being joined in the underlying action, including [state third-party defendants]." Mot. at 5. Defendant also seems to incorporate an argument under Federal Rules of Civil Procedure ("Rules") 12(b)(7) and 19 that this case should not proceed without necessary parties, i.e., parties named in the Third Party Complaint. *Id*. at 6. Plaintiff maintains that this case "will serve a useful purpose because it will resolve the single controversy between Indian Harbor and Coombes—i.e., whether there is coverage for the [State Court Case] under the Policy." INDIAN HARBOR INSURANCE COMPANY'S RESPONSE TO COOMBES TRUCKING, INC.'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 9) ("Response").

A court must undergo a three-part analysis to determine if Rules 12(b)(7) and 19 require dismissal for inability to join a required party. *See N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012) (citing *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993, 997 (10th Cir. 2001)). "First, the court must find that a prospective party is 'required to be joined' under Rule 19(a)." *N. Arapaho Tribe*, 697 F.3d at 1278. "Second, the court must determine that the required party cannot feasibly be joined." *Id*. Third, "the court must determine, under Rule 19(b), whether the required-but-not-feasibly-joined party is so important to the action that the action cannot 'in equity and good conscience' proceed in that person's absence." *Id*. (quoting Fed. R. Civ. P. 19(b)). "If that is the case, then the action 'should be dismissed.'" *N. Arapaho Tribe*, 697 F.3d at 1278–79 (quoting Fed. R. Civ. P. 19(b)).

Rule 19(a) requires joinder of a party, subject to constraints on process and subject matter jurisdiction, if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Defendant does not elaborate why the state court third-party defendants National Truck Services Group ("NTSG"), Crump Insurance Services, Inc., CRC Insurance Services, Inc., Heffernan Insurance Brokers, Inc., Catlin XL, and AXA XL have an interest in the outcome of this case. The Third-Party Complaint primarily asserts claims of deceptive business practices and

5

negligent insurance procurement, and only at the end does Defendant raise a declaratory claim seeking indemnification from Plaintiff. *See generally* Third Party Compl. Aside from being named in the same Third-Party Complaint, the Court does not see what legal stake Defendant's insurance brokers have in Defendant's coverage dispute with Plaintiff. The Court finds these parties are not required to be joined under Rule 19. The Court therefore need not dismiss the case for inability to join a required party.

Regardless of the Rule 19 findings, the Court is not convinced that a declaratory judgment, as requested, would settle this controversy. Although Plaintiff seeks only a declaration of its obligations under the Policy, the Court cannot ignore the greater scope of the controversy here. Defendant has raised a claim of unfair insurance practices against Plaintiff (along with the other third-party defendants). *See* Third Party Compl. at ¶¶ 106–112. Defendant has also raised issues with respect to its reasonable coverage expectations, the enforceability of the exclusions, and ambiguity as to who is "the proper holder of Catlin's interest with the capacity to assert its rights and the duty to defend Coombes." Mot. at 2–3. The Court could likely resolve the legal determination of Plaintiff's duty to defend, the only claim before the Court, with relative ease. But even with that question resolved, the Court would still leave open more questions in this dispute—the controversy would be far from resolved. Conversely, the state court is in a position to answer all the questions raised by the parties. This factor therefore weighs against exercising jurisdiction.

> *2. Will a declaratory judgment serve a useful purpose in clarifying the legal relations at issue?*

This factor, in essence, requires a court to ask whether a declaratory judgment would add anything to the existing state court litigation. "[T]he inquiry into whether the declaratory

judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court." *See United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002). Where a court could decline jurisdiction in favor of a consolidated or more efficient state proceeding, this factor weighs against federal jurisdiction. *See id*. ("By declining jurisdiction, the district court avoided a piecemeal approach to adjudicating the rights . . . [and] acted within its discretion in determining that the [plaintiff's] claims against the named defendants . . . would be better settled in a unified proceeding."). Where a "state court will examine the complaint and the insurance policy to determine whether the allegations arise from conduct outside of the coverage, it is not necessary for [the federal court] to issue a declaration of rights." *Nautilus Ins. Co. v. Tierra Blanca Ranch*, No. 14-CV-988 MCA/SMV, 2015 WL 11643517, at *4 (D.N.M. Sept. 29, 2015).

The Third Party Complaint in the State Court Case raises the same duty to defend question as the Complaint here—and raises several more. In the Third Party Complaint, Defendant seeks a declaration that the "[P]olicy gives rise to coverage regarding defense and indemnification, notwithstanding the exclusions[.]" Third Party Compl. at ¶ 114a. The parties debating declaratory relief in the State Court Case are the same parties in this federal declaratory suit. The state court should be able to resolve these issues just as well as this Court, making a declaratory judgment in this case redundant. There is no "live need" for the coverage issues here to be resolved in a federal court. *See Nautilus*, 2015 WL 11643517, at *4. This factor weighs in favor of declining federal court jurisdiction.

*3. Is the declaratory remedy being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata?*

Defendant and Plaintiff both suggest the other is engaging in procedural fencing. Defendant claims that Plaintiff's filing of the Complaint three years after the beginning of this dispute weighs the third *Mhoon* factor in favor of dismissal. *See* Mot. at 8. Defendant, however, concedes that "[Plaintiff's] race to federal court may not be inappropriate 'procedural fencing[,]'" but that nonetheless "the timing and effect of its declaratory judgment action is no doubt designed to circumvent the more detailed factual analysis necessary for the resolution of the state court action." *Id*. at 8–9. Plaintiff argues, in a subheader, that because "[Defendant] did not seek leave from the state court to file its third party complaint . . . until months after this Action was filed and years after coverage was denied on these very grounds . . . strong evidence [suggests] that [Defendant], not [Plaintiff], has engaged in 'procedural fencing[.]'" Resp. at 9. Plaintiff contends that Defendant "had ample opportunity to bring its own state court action to resolve the coverage question but chose to do so only years after [Plaintiff] had disclaimed coverage for the tandem lift accident and then a year after the [State Court Case] was filed and months after [Plaintiff] had filed this coverage action." *Id*. at 9–10.

Procedural fencing "typically involve[s] questionable actions on the part of the party seeking a declaratory judgment[.]" *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 984 (10th Cir. 2012). This can include using a declaratory judgment action "to provide an arena for a race to *res judicata*." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995). In *Runyon*, the plaintiff "filed its federal suit one day before the date [the insured defendant] promised to file his state court contract action against [the plaintiff]." *Id*. "[The plaintiff] knew [the defendant] was going to file the state contract

8

action; [the plaintiff] knew the date [the defendant] was going to file the action; and [the plaintiff] waited three years before it sought the declaration." *Id*. The suspicious timing of the suit prompted the district court to find that the plaintiff engaged in procedural fencing, with which the Tenth Circuit agreed. *Id*.

The Court does not believe that either party is engaging in procedural fencing. Plaintiff certainly could be seeking what it perceives is a more favorable forum, and could very well have filed this suit in federal court for that reason. "There is much courts do not know, particularly courts not involved in the underlying litigation, about the strategy of attorneys and the timing of certain filings . . . ." *Nautilus*, 2015 WL 11643517, at *5. Defendant concedes that Plaintiff has not acted inappropriately by filing the Complaint. The Court will not find that Plaintiff engaged in procedural fencing and this factor does not support or weigh against federal court jurisdiction.

*4. Would a declaratory judgment increase friction between federal and state courts and improperly encroach upon state jurisdiction?*

Defendant argues that the Court should dismiss because "[t]he state court has a unique and greater fundamental interest in the substantive social policy of how surplus insurers and insurance brokers handle oil field matters." Mot. at 9. Plaintiff defends that "federal courts are well equipped to resolve insurance coverage disputes under state law and do so regularly" and "New Mexico state courts, because of their more limited reserves and extreme caseloads, are often pleased that the federal court is deciding the coverage issue." Resp. at 10.

Defendant cites to *Barth v. Coleman*, 1994-NMSC-067, ¶ 20, 118 N.M. 1, 878 P.2d 319, to support its contention that the state court is the more appropriate forum. *Barth* involved a dispute over insurance coverage similar to the dispute here, where the insured purchased surplus line insurance, through several intermediaries, that did not meet the insured's expectations. *See*

9

*id.* at ¶ 13. Although *Barth* discusses general principles about insurance coverage expectations, the New Mexico Supreme Court did not express any preference for state court adjudication of the types of claims raised here. Nothing expressed in *Barth* dictates that this Court could not, for surplus line insurance or oilfield-related insurance policy reasons, competently resolve insurance disputes with issues of unscrupulous intermediary broker practices. The Court is also skeptical of Defendant's claims that this case implicates any state oil-related policy, given that the underlying facts only tangentially relate to the New Mexico oil industry. The Court agrees with Plaintiff that "[w]hat they were lifting is irrelevant and should not impact where coverage disputes are determined, as what [Defendant] lift[s] varies." Resp. at 12.

The Court recognizes, however, that New Mexico courts generally have a preference "for having insurance coverage issues resolved by the court hearing the underlying case." *Nautilus*, 2015 WL 11643517, at *4 (citing *Lopez v. New Mexico Pub. Sch. Ins. Auth.*, 1994-NMSC-017, ¶ 11, 117 N.M. 207, 210, 870 P.2d 745, 748; *Found. Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038, ¶ 11, 97 N.M. 618, 620, 642 P.2d 604, 606). And, as recognized in *Nautilus*, "[t]he fact that the Third Party Complaint is pending in state court also raises concerns about federal interference with the state case and possible friction with the state court." *Nautilus*, 2015 WL 11643517, at *4. Given that the *Nautilus* Judge did not know the status and position of the identical state court proceeding, if the federal court "entered a judgment it could undermine the state court's work on the issue or possibly enter a judgment contrary to the state court's as yet unpublished ruling." *Id*. The *Nautilus* Judge concluded that there was "a high likelihood of interfering in the state case where an identical or nearly identical issue is pending." *Id*.

The Court is hesitant to exercise jurisdiction given these concerns. Although Defendant filed the state Third Party Complaint after Plaintiff filed the federal Complaint, each case has the

10

potential to interfere with the other. The Court must also acknowledge its responsibility to not interfere with the state court under these circumstances. *See Brillhart*, 316 U.S. at 495. Staying or dismissing the case would also align with the state policy preference to resolve the coverage issue in the court closest to the actual dispute. This factor weighs in favor of declining federal court jurisdiction.

> 5. *Is there an alternative remedy which is better or more effective?*

In support of the fifth *Mhoon* factor, Defendant argues that the state court is the more desirable and efficient forum. *See* Mot. at 10. Plaintiff's arguments on this factor largely incorporate its arguments for the fourth *Mhoon* factor. *See* Resp. at 10–12.

The Court, again, is well-equipped to resolve the coverage question. As recognized in *Nautilus*, however, resolution in state court provides "a better and more effective resolution of [an] insurance company's obligations." *Nautilus*, 2015 WL 11643517, at *4. The state court is in a better position to apply state law and "is also informed of and has control over the evolving procedural developments evident in this case such as the joining of parties, the amending of complaints, and the filing of third party actions" in the underlying case. *Id*. (citing *Mid–Continent Cas. Co*., 685 F.3d at 986). Given the presence of Defendant's other claims against Plaintiff and parties not before the Court, the state court is "simply better situated to provide complete relief to all parties involved in the coverage dispute." *Mid–Continent Cas. Co*., 685 F.3d at 986. From a procedural efficiency standpoint, this factor weighs in favor of declining jurisdiction.

## Conclusion

The Court believes that, although it could resolve the coverage issue here, this dispute is better resolved in the New Mexico state court. Instead of dismissing this case, however, "where

the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995). The Court will therefore stay this case pending the resolution of the Third Party Complaint in the State Court Case. If the State Court Case fails to adequately resolve the issues presented in the Complaint, the Court can revisit these issues. Staying the case balances the rights of Plaintiff to a federal forum if one is necessary, while respecting New Mexico's policy preferences and promoting efficient resolution of the State Court Case.

IT IS THEREFORE ORDERED that:

(1) DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT & MEMORANDUM IN SUPPORT (Doc. No. 4) is GRANTED; and

(2) This case is STAYED pending resolution of Defendant's Third Party Complaint in the State Court Case.

_____
SENIOR UNITED STATES DISTRICT JUDGE